The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Morning, counsel. We'll call the first case. It's 4-22-0091, People of the State of Illinois v. Aaron Parlier. Good counsel, for the appellant, please state your name for the record. Yes, good morning, Your Honor. For the record, my name is Adam Belatten. I will be presenting the oral argument on behalf of the appellant, Mr. Aaron Parlier. Thank you. And, counsel, for the appellate, could you please state your name for the record? Good morning, Your Honors. I am Allison Page Brooks, and I'll be presenting the argument on behalf of the People of the State of Illinois. All right, thank you. Mr. Belatten, you may proceed. Thank you, and may it please the Court, Your Honors. Today, we are asking this Court to reverse Mr. Parlier's convictions and to remand for three reasons. First, the trial court erred when it denied Mr. Parlier's motion to quash search warrants. Second, the indictment failed to state the nature of the child pornography count. And third, the State failed to prove Mr. Parlier guilty beyond a reasonable doubt. Now, I intend to devote this morning's oral argument to the first two issues, beginning first with the motion to quash search warrants. As we outlined in our written submissions, this Court should reverse the trial court's denial of the motion to quash and suppress because the search warrant failed to establish probable cause that evidence of a crime would be located in the places to be searched. Namely, the complaints were based on entirely stale information, and compounding that staleness issue, the warrants complaint failed to establish the required nexus connecting not only the allegations to the places to be searched, but also Mr. Parlier to those places. And finally, the good faith exception does not apply. Turning to the issue of staleness, the allegations found set forth were a four to 12 year old allegations of Jane Doe, and a six to eight year old allegations of AG. Now, when we look at those types of time period, it's true that this court and no court has ever drawn a line in the sand, holding that a specific span of time renders allegations to be too stale. But if we look at other staleness cases, it's clear that this case is an outlier based on not only its time, but the type of evidence that the complaint sought to discover. For instance, the Jane's decision out of the fifth district dealt in only a two month old tip. Donna's out of the first district was a five month old tip. And Siever, the Seventh Circuit decision was a seven month old tip. We're comparing month to nearly an entire half decade of time. And that time period cannot just be compared to these cases. But in reality, this case is much more comparable to the Perdoe Wentz case out of the Seventh Circuit, which held that a four year old tip based on information of allegations of specific downloading and uploading of pornography files tied to an IP address. Even that type of computer based evidence was too old, was too stale in order for a court to issue a warrant granting search of the of the home. But, your honors, I argue that the evidence that was going to be searched for and supposedly located in the places to be searched was not comparable to computer based files. Because in the complaint, as it outlined, it was searching for torn clothing that existed four years in the past or six years in the past. Camcorder recordings that were recorded, again, for excuse me, six to eight years in the past. And this type of evidence is not the same type of evidence talked about in Seaver, that evidence on a computer may be deleted, but its remnants remain. But if your honors are in the position to believe that this type of evidence is comparable, I ask that you heed Seaver's acknowledgement that even in cases with computer files, which we don't have here. Counselor, can I ask a question? Of course, your honor. Is it a question of the nature of the information or the practices of child pornographers that's more relevant in determining the staleness question? Well, I think that it's both, Judge. And if you look at both sides of your question, it's the type of evidence that was being searched for in this case, because it's not downloading. Your honors have to look at the facts of this case. The facts of this case, as alleged in the complaint, were that Mr. Parlier created child pornography by recording the sex act with AG. There is absolutely zero evidence stated in the complaint that Mr. Parlier uploaded that recording to a computer or downloaded any other types of child pornography. So if you look at this specific allegation in the complaint, it's different than the run-of-the-mill or the modus operandi of quote-unquote child pornographers. Again, this court has to look to the four corners of the complaint. But your honor, I see that you may be considering that, Mr. Bolotin. I think that it is relevant to look at the overall practices of child pornographers. But it brings me back to the Seavers case's words that a very long time can diminish the likelihood that this evidence still exists in the defendant's possession. And Seavers dealt with a month-long gap. We're talking about years. And the Parlier-Wentz case, again, dealt with child pornographers that were downloading files. But that time period, which was four years, is the same time period as this case. And the still probable cause to believe that this evidence still exists and is going to be located in the places to be searched. But in this case, instead of really narrowing that down or showing in the complaint additional facts that this evidence still existed based on witnesses, observations, or further investigation by law enforcement in this case, the complaint just bolstering the affiant's training and experience. In that Rojas case, I believe directs this court to find that the affiant's statement of training and experience cannot just substitute or be placed in place of specific articulable facts laid out in the complaint showing that this evidence exists and exists in the place to be searched. And I just as a final note on the staleness issue, courts have held that the single most important factor to consider when looking at staleness is whether this offense was ongoing with continuing. And in this case, the complaint is silent after the most recent time of four years. AG and Jane Doe don't have any communication with Mr. Parlier. And there's no additional pieces of evidence that are discovered by law enforcement set forth in the complaint showing that this allegation and these offenses or additional offenses were ongoing within the four-year time period. But I would argue, Your Honors, that setting staleness aside, when we evaluate or when this court evaluates arguments arguing that the search warrant should be quashed and there's not probable cause, it's a totality of the circumstances. And it's important to remember that Mr. Parlier did not simply argue that the warrant should be quashed because it relied on sale information, but the additional totality of circumstances, namely the nexus, the required nexus of the complaint that set forth that there was a connection between Mr. Parlier and the places to be searched. Council, can I interject before we segue away and move on to the nexus? You referenced the case of Jane's and that case also referenced the fact that it's known that collectors of child pornography, however you might want to say, are long-term collectors, hoarders, things of that nature. You made reference to that, but in light of the staleness issue, can you address that issue? Because it would seem to the court that in this particular type of case, the period in which staleness would attach would be longer in this type of case. Well, Your Honor, I would answer your question in two parts. One, the assertion that this is a case set forth in the complaint is officially establishing that law enforcement is investigating a collector of child pornography. I don't believe it's established in the complaint because what you have is you have 20 occasions, according to AG, where she had sex with Mr. Parlier once she was underage. So 20 occasions, and AG had stated, according to the complaint, that he did not record every single video. So what you have is not sufficient evidence outlined in the complaint to establish that Mr. Parlier or that the complaint sets forth that this is a collector person, thereby leading, Your Honor, to conclude that collectors hold evidence much longer and it's less likely that this evidence is stale. However, additionally, on the second part of your question, Judge, you should look at the Perdoe-Wentz case, because in that case, you have more of an allegation in the complaint of the collector-type child pornographer. But even so, it's four years, and the Seventh Circuit says four years is too long, this evidence is too stale. So even if, Your Honors, and I strongly advise that the complaint, it does not plead sufficient facts to get into the realm of a collector child pornographer, that it's too old under the Perdoe-Wentz analysis. But on top of this collector or the issue that you brought up with staleness, Judge, it's a totality of the circumstances. And this totality includes the required nexus of the complaint connecting Mr. Parlier to the places to be searched. And also that evidence of these allegations is going to be found in the place to be searched. And you don't have either of those two things. The only evidence connecting Mr. Parlier to the resident is a statement by somebody that says that he lives on Deer Lane, or is residing on Deer Lane currently. It's not just somebody, it's his mother. Right. Exactly, Judge. It is his mother who says Deer Lane. But it's not necessarily the importance of who says it, but what is said. And what is said is he lives on this street. It doesn't say he lives at this exact house. And simply living on a street is certainly not probable cause to issue a search warrant to search any house on the street. And compound, and the only other fact connecting them to that case is that a car that was owned by his, I believe it was then his then fiance, was parked at the residence. But I direct your honor's attention to the Rojas decision. And in Rojas, again, the court says that look, the car being parked at the residence and it wasn't even in Rojas, it was the defendant's exact car. In this case, we don't even have his exact car, but a car registered to somebody else. And the car being parked there was not enough to issue a search warrant to search the house. And the same conclusion should be reached by your honors in this case. But even if- Don't we have to consider those two factors together? There's pretty good information that he lives on that street, and there's the car parked in front of that house. I know that's probably very factually specific to this case, but don't we have to consider those together? I think we also, just to add to that, I think we have the make of the car at that point. Honorable Kavanaugh, we don't have the make of the car at that point. It's a separate car. The make of the car has to do with the search of the SUV that was parked in a parking lot that was that's a separate search. That's a separate issue. And that description of that car was not laid out as parked at the house. Honorable, I apologize, Judge. I don't want to mispronounce your name. Doherty. Doherty, thank you. You do have to consider both of those together, I agree. But what's more important is not just the fact that Mr. Parlier may be connected to this house based on statement of his mother that he lives on the street and that a car registered to his fiance was parked at the residence, but that evidence of that of those allegations is going to be located at that residence. Well, I know, but that's a separate question. You were talking about the nexus between the defendant and the location. And in that respect, I think those two pieces of evidence would support the nexus of the defendant being I see the conclusion that you're reaching, but I believe that the in addition, and again, it's a totality of the circumstances, right? So in addition to Mr. Parlier being connected to that residence, it's imperative that not just that he lives there, but that he transferred evidence from that was created, again, four to six years at the earliest to that resident, and that that evidence still exists at that. And I would direct your honor's attention to the Perdoe-Wentz case, because in that case, the defendant, the evidence in the complaint outlined that he was downloading child pornography at one residence, and that he moved to a different one. And the court found that that is too stale. It's not enough. And there wasn't evidence connecting or showing that he transferred this stale evidence to that new residence. And what we can look at, again, in a different case, is the Carroll discussion, where, and it's the Seventh Circuit Carroll decision, where the defendant in that case argued that there was not a proper nexus establishing that evidence of this prior crime. And the allegations were that I believe he photographed a young girl who, at the time that she made the complaint, was 13 years old, and that he photographed her when she was eight. So we have a separation of time. And he did so at his professional photography studio. And the defendant argued that, look, there's not a proper nexus established between what I did at the photography studio in order for you guys to say that there's probable cause to search the home. But isn't that different? Because those are two different things. So if he does something in one place, it doesn't mean he's doing it in another. But a residence is normally in a serial arrangement. So it doesn't seem like a big leap that somebody, when they move residences, would take the items in one residence and move them to the next. I would say that it is actually a larger leap, because I think that what we're not talking about a move within a couple of weeks of something happening, let's say, in the fall of one year and then a move in the spring. In order to really lock this down, it has to be asserted and established that there's probable cause that this evidence still exists in his possession, and that he transferred it to another residence. But to isolate that issue, I think we could look at and say, is there probable cause to search the original residence, which actually was searched? And then very soon thereafter, searching the next residence, the staleness is common to both. Can't we isolate? I know it's a totality, but can't we isolate that factor and say, if we think that there was cause to search the residence and it wasn't so stale, then there's likely going to be cause to search the next residence that comes shortly thereafter. But I would argue, Judge, that it's not the residence that is stale, it's that the evidence that it's supposed to be located in the home is stale. That's the issue. And when we look, and I think that it's important because there's no allegations in the complaint that Mr. Parlier was transferring these videos on the camcorder to an updated storage device. That was a factor that the Carroll Court discussed that, look, there's evidence in the complaint that he has a large number of thumb drives and memory sticks, and that he was taking the camera from his work to the home, and there's the evidence laid out in the complaint that is just not in the complaint at all in our case. Again, Mr. Palaten, you're focusing on the nature of the evidence and the big, from my perspective, the big question is the practice, habit, custom, and practice of those who engage in child pornography. And if we look at that, then the question becomes, was there enough in the affidavit to establish that this is the habit, custom, and practice of child pornographers, and that regardless of the nature of the evidence, we can assume, or there's probable cause to believe, that this is going to happen, that these items are going to be kept, they're going to be retained, they're going to be kept in a personal location such as a home. If they're in one place, then as Justice Doherty pointed out, it's just as likely they're going to be in the next home that he lives in. Shouldn't we be focusing on the habit, custom, and practice of the pornographer versus just the nature of the evidence itself? I think you can, Judge. And if you do so, and you look at the Perdoe-Wentz case, that's the exact type of analysis the court there employed. And it said, even if we're and it's four years too long in this case, because again, the character of the evidence matters. And it matters because computer files, as Siever talked about, have a reputation of still existing, even if they're deleted, right? But even in Perdoe-Wentz, computer files, because it's four years long and not a couple of months, you have to really consider that. And it can't just be taken for granted that because you have an allegation of child pornography. And again, it has to be less than 20 videos based on what's laid out in the complaint. And it's not this allegation that somebody is on a computer at their home, downloading hundreds and hundreds and hundreds of files and different searches with hash values and the like of it. It's a video on a camcorder. And Your Honor. If I might ask a question before you allow Mr. Bolton to finish up, why would we treat a camcorder, which I think the inference here is it's digital, if they're being transferred to a laptop, unless there's some intermediary device that I haven't heard suggested. But why would we treat a camcorder differently, a digital camcorder differently than a computer? Wouldn't the same truths exist with respect to videos stored on, but then deleted from a camcorder that there may be forensic evidence of their existence much later on? Well, Judge, I believe that the difference between a camcorder and a computer, in my experience, and I could be wrong, but a camcorder, if you delete the video, right, you don't have that type of hashtag value or the remnants of the video still existing on the camcorder device itself. But I don't know why that's true, because I know that they use the same kind of memory cards that you can use in other devices. My knowledge of it may not be exact, but Your Honor, if you can, if you want to say that it's the same thing as a computer file, then I would direct Your Honor's case, which says four years is too long. And I would also note that in the warrant application Excel itself, the law enforcement doesn't even ask the search or see a camcorder device from the location, which I think is an important fact that it doesn't even lay out that it believes that there's probable cause that the only device that the witness talks about would be located in the place to be searched. Thank you, Mr. Blatton. Your time is up. We will have an opportunity on rebuttal, however. Counselor for the appellate. Thank you, Your Honor. May it please the court. It's important to recognize that this is a differential standard review of preferences to uphold a warrant. And also, it's also important to recognize that there is the good face exception to suppression. So there is a difference between a bare bones affidavit, for example, and one that is just simply lacking in probable cause. So to actually obtain suppression, the defendant is going to have to show that not only was the affidavit lacking in probable cause, contrary to the great deference that the standard review that applies to the judge's determination that there was probable cause for the warrant, but also that the affidavit was so bare bones. There's no claim that it's not a neutral magistrate or any of the other exceptions. So to suppress the affidavit would have to be and that's not been shown with respect to whether there was a substantial basis for probable cause in the search warrants affidavit. The questions here, it seems to be whether the defendant retained the child pornography that he was producing and also how and where. And so the defendant is sort of challenging all of that. And in terms of the staleness question, the question of whether the defendant retained child pornography for the number of years that he's talking about, which he says is about a half a decade, for example, the affidavit refers to the extensive experience of Detective Heinlein, the affiant. And he talks about, there's also the cases that mention the likelihood of retention of producers. Ms. Brooks, you started to mention it. Could you discuss the extent of the detail that was provided, if any, by the investigator about these practices? Well, it's not as like specific. It mentions the source of his experience from talking to, working on his own investigations and discuss conversations with other detectives. It does, but other than general terms, what really does it describe about the specific nature or practices of a child pornographer, just beyond general terms? You mean in terms of like the affiant says that based on his own experience and based on his conversations with other detectives, he understands that it's common for, for example, files to be transferred between devices. Is that your question? Well, that's one, because that brings up the point that Justice Doherty and Mr. Blatt were talking about at the very end of this argument. Was there any information that there'd ever been a transfer from the camcorder? There apparently was information there was a camcorder. Was there ever specific information that he transferred files from the camcorder to anything? There's no specific information that the defendant did in fact transfer it. It's a reasonable inference drawn from the detective's expressed experiences. Well, but you say it's a reasonable inference, but does he just, does he back that up with any factual information that, well, based upon my experience, education and training, we have seen in X number of instances, or I have been advised that, you know, people who do this with camcorders very frequently transfer it to computers so that they can, you know, compress the information and not use up their, their file in the camcorder or something. I mean, just any, any facts beyond, well, we believe that it's a practice that they transfer files. I mean, is that the kind of probable cause sufficient to be justifying searches of homes? The, the trial court deemed it to be, and the, that there's no like specific, like prior investigations referenced within the affidavit, like actual other cases is that, and like, that's not, that's, it's not that detailed that it's just mostly reflecting that the two things was the defective's own experience and also conversations with other detectives who have engaged in any sort of investigation. With that kind of general information, what prevents you from getting a search warrant for anything, anywhere, at any time? But the... It's just my, it's not, it's my understanding that these things happen. And, you know, I've talked to a lot of other investigators and they say these sort of things happen. There's no indication that we have any reason to believe they happened in this instance, but it's just that, well, we know that this is what happens. And so we're going to infer that it's been transferred to something else. Did they ask to search computers and things of that nature? Exactly what they asked to search for any and all computers, video recorders, cameras, that's on page one of the affidavit. So that was, they were in fact asking to receive, to seize cameras and video recorders as well, as well as all kinds of storage, media, computers. I think what separates this from just the ability to the police to search anyone's house is that the defendant here is, there was an underage witness, a witness who had detailed having been recorded while underage with a camcorder on what was called often while having over a dozen instances of sexual encounters with the defendant. I don't think anybody disputes that question. The question that the defendant raises is, yeah, but that's four to 12 years ago and there's a reference to a camcorder. That's it. Right. And why I say this in the Jaynes case is because it is difficult and risky to obtain, but it's more important to cite the Carroll case, which says that it's more likely for a producer of child pornography to retain depictions of a victim that the defendant had personally molested. And that was deemed to be those sort of mementos are what the court called irreplaceable. So did the investigator include those facts or those kinds of facts in his affidavit? About whether producers are more likely to retain. I'm trying to remember if if that was in there. Oh, it says they're talking about D7, it says is common for people who possess images to also take pictures and attempt to either produce child's pornography, their own use or trade. This is all very general information from the officer's experience. And that's what it talks about is it's common for individuals to transfer it to old from older devices to newer devices. I'm not sure if that particular part was in the I didn't see it in there specifically. But essentially, the reasonable inference is a defendant who is producing their own visual depictions of the acts of molestation for a personally molested victim is more likely going to hold on to that because that's not something they can just get back by downloading it. So the case the defendant relies on, which they said was stale, was a case where simply downloading and uploading activity versus a defendant, like in the Carroll case, Dicta recognizes personal. Personal molestation evidence is going to be irreplaceable. It's not going to be something that the defendant is likely to throw away quickly, as it would be for the other situation where simply downloading and uploading information. So with respect to the next is the place to search. The the fact is that the police find out through a other another search warrant, the defendant had vacated the 1806 Peerway apartment to 12 address about a month before. So in combination with the information that he was living on Deer Lane, as well as the observation of a vehicle connected to the defendant through a pair more wife or fiance, I'm not sure which, but some sort of relationship with the vehicle at the 5930 Deer Lane address. I think that narrows it down specifically enough to at least to make the standard for probable cause and definitely would not have any problem meeting the not being bare bones for the good faith exception. And so for those reasons, the trial court correctly arrived at the decision not to express evidence and that the trial court's probable cause decision should receive deference from this court. The defendant also, I think, was requesting before you move on. Let me ask you, because opposing counsel referenced the good faith exception not applying here. And I ran out of time before I was able to ask him, OK, did you hear that? And do you want to address that? Well, I talked about the only good faith exception, I think that would they would avoid the good place exception and receive suppression is that they could convince this court that it was a bare bones affidavit. And I think the state is distinguished the case they relied upon here, even if the even if there was not a substantial basis for showing probable cause, it would certainly meet the standard for not being bare bones. So the case that the state cited say that it's different. A bare bones affidavit is not the same as just an affidavit that is simply lacking in probable cause. So they'd have to show not just that the probable cause determination should be reversed, despite the great deference that this court must provide to the trial court's ruling. But that is also a bare bones affidavit and therefore be entitled suppression, notwithstanding the good faith exception to suppression. So that would be the state's argument on that point. Thank you. The last one I was just going to talk about was what the defendants requesting outright vacating of the convictions on not just the child pornography counts, but also the predatory criminal sexual assault accounts. And the Olivera case is important because the question of sufficiency of the evidence and whether retrial would be permitted depends on whether all of the evidence, even erroneously admitting evidence, prove the charges. So if the evidence of the acts of sexual penetration depicted in the child pornography were erroneously admitted, they still qualify as evidence for purposes of the sufficiency of the evidence in determining under Olivera whether a retrial would be permitted. So the other element why a court might not grant a retrial is if in a situation where evidence is the court deems the prosecution could not proceed without the suppressed evidence, typically like, say, in a drug case when if it sees drugs are suppressed and they say, the court would say, well, the state couldn't possibly proceed to another trial without the suppressed drugs. But here this is child pornography. This possibly could have been duplicated further and distributed and thereby seized by the police, which is not in the record. But it's certainly possible that because of the nature of child pornography, that it could be copied and distributed and the state might thereby seize without having to seize from the defendant's own computer acts of child video depictions of child pornography the defendant had produced. Of course, in that situation, the victim E.W. would have to testify to authenticate the and the other thing is that E.W. could also testify to acts of sexual penetration. So this is not a case where the like, for example, predatory criminal sexual assault couldn't be proved. So therefore, there's no reason to to not have a retrial because the suppression leaves the case unable to be proved because here at a retrial, E.W. could predatory criminal sexual assault should not be reversed simply on the on the ground that the evidence of the videos would have to be suppressed. I understand defendant also makes separate arguments, which you didn't get to today about sufficiency of evidence. But the state's point is least under Olivera. The evidence of the videos have to be considered in terms of whether defendant was proved guilty beyond a reasonable doubt. And so even with the evidence was suppressed because child pornography could have been copied and distributed and might be located at a location other than in the defendant's control that was subject to the search warrant, it is least conceivable that state might be able to prove those charges at a retrial. So at least those cases should not be reversed outright if the if the warrant would be the information derived from the warrant would have to be suppressed. That's the state's argument. But otherwise, I would request this court to affirm. Thank you. Councilman, I asked you about the the sufficiency of the evidence with respect to the number of violations, whether it's five or 10. I think both sides are in agreement that there were like five original source videos. And there were cuts made from those that brought the number to 10. Do you do you interpret. I think it's a. The subsection says possession of individual films and videotapes constitutes a single and separate violation, but not when they're identical to each other. I think it's a five. That does talk about possession. Does that apply to creation as well? By its own language, it's refers to possession. So that would have to be more like to. To determine like the legislative intent behind a statute. So if a defendant is the legislative intent here is to prohibit the and restrict the flow of supply of items of child pornography, and therefore it could be reasonably for the legislature. The legislature would intend that if a defendant took one video. And either cut it in smaller pieces that could be looped easily or slowed up it that that would be deemed deemed a creation of an of additional items of child supply. Even if it was derived from an initial video that that sort of manipulation of the videos by either shortening it or slowing up the speed and are definitely the difference of angles that that's all those videos would all be. Would increase the supply chart photography and therefore the legislature would intend that any defendant who creates a new video out of an old video would thereby have created a new piece of child pornography because it's not identical because it is not identical length or it's not identical in speed. There's a difference there. It's that renders it not identical, but exactly duplicating it 100 times wouldn't. Add to the supply. Oh, if it was identical. Yes, that could also increase the supply if it was like, for example, printed matter or videotapes, or if you put the same file on 100 different thumb drives that could also increase the that would not violate the statute as additional creation. For reproduction. Um, that that would constitute additional reproduction, but. I'm I'm trying to remember here. I think when this thing is, the statute would be is that the defendant had the same video file under different file names. It was the identical video. They didn't want the defendant to receive 2 convictions for possession for what's essentially the identical video, but if it's in production rather than possession, there could be a difference there with the legislature would punish the distribution of identical videos more severely than just possession of identical videos under different file names. All right, thank you. Thank you. Ms. Brooks, was the evidence clear that the different versions that they obtained were specifically manipulated by the defendant? Or was it simply a matter that one file reached its maximum level and then switched over to create a second file? Oh, it's very inartfully worded. I understand. Well, what did the defendants like affirmative action to it? Or do you mean through the intervention of technology? Yeah, it was just a matter of technology that there was too much for one file and it goes to a second file. Or was it that the defendant actually created these individual files? I don't remember specifically. I know one file I think was slowed up, so that would have been manipulated and the inference would be if it was on defendant's computer that he was the one who did that, even though there's no direct evidence that he was the person, so that would have to be through reasonable inference. In terms of other files, if a file was shorter and but also was wholly contained in another file, that could be an specifically truncated and copied into a different file as a shorter file for purposes of looping, for example. Otherwise, I don't remember specifically whether any files were in sequence. But these were labeled like my movie or something with different numbers. I don't know that a technology would have done that automatically. Okay. Thank you, Your Honors. All right. Thank you, Ms. Brooks. Mr. Balot, rebuttal. Thank you, Judge. I had to unmute myself. I have a couple of different points to make in my five minutes. I think the first point, and it's probably something that I should have addressed at the beginning of the argument, is the standard of review. Obviously, a search warrant does have a deferential standard, but it is a de novo review. Simply because the trial court in reviewing the motion to quash found that, oh, no, this is not stale or there is a proper nexus. It's still a de novo standard of review. This court is looking at those issues with fresh eyes. And that's counsel. That's where good faith comes in. And Your Honor, I was just about to address the good. I just want to make sure you did this time. Thank you. Of course. Yeah, I was going there right now, Judge. When we look at the good faith exception, what we're looking for is bare bones. And not simply that just because a warrant affidavit or a complaint in support of a search warrant is dozens of pages long. But it has to go towards what is in that affidavit establishing that things are going to be located in the places that it seeks to search. And when we look at that nexus, there is not that type of well pleaded facts in that complaint. And instead, it's just relying on the officer's dated experience. But it's not artfully and specific to the facts of this case. When you look at the type of experience that he's talking about, he's talking about in general terms, he doesn't put in the affidavit that in his experience, he knows that people who create the child pornography hold it for longer, or that in his experience, or in his investigation, rather, that there is concrete evidence arising the probable cause outside of just my training and experience, that this camcorder recording was transferred to a larger storage device or counsel. Yes, let me read you this language. I know that is common for people that possesses images of child pornography to save those images to items of removable media such as compact CDs, digital video discs, DVDs, secure data, SD cards, and other types of digital media. How would you deal with with that? Because that certainly if laid out in pursuing the warrant, circumstantially suggest that computers other places may have these types of items stored? Your Honor, I would direct I would answer that question by turning to the Rojas case that said that an officer's training and experience that in his training and experience, narcotics traffickers keep proceeds of drug transactions or store drugs or records in their home. The Rojas court said you can't simply just rely on an officer stated training and experience to search a home, you need more. So in his training and experience, you don't have the types of facts that well, AG said that I saw him with a desktop computer, I saw him plug it in, or that we watched together on a different media file, not to mention watched it within the last couple of months, rather than years. But isn't it different in a case such as this one where you have a firsthand eyewitness who says that they saw the events? It's not it's not quite as bare bones as just saying, we think it might be there. You have a witness who said it happened there. Judge, it didn't happen there. It happened. Respectfully, it happened four years previously at a completely different location at his residence, but not at the place to be searched. And again, we can't look at these issues without acknowledging the staleness of them. And the staleness of okay, yes, we may have evidence that a crime was committed. I would certainly agree that that's probable cause to arrest Mr. Parlier based on these statements. But it's not probable cause to establish, to go in and search the home, because evidence of those allegations must be located in the places to be searched. And I think just... I guess in terms of whether it's a bare bones affidavit, I feel like the presence of firsthand testimony that these events happened in his residence make it difficult to construe this as a bare bones affidavit. At his residence, but where is the allegation in the complaint showing that evidence of those offenses that happened four to six or 12 years in the past are going to be located in the place to be searched? There's absolutely no facts pled showing that Mr. Parlier... I see that my time is up, but I'm just going to really quickly finish this up. That he transported things that were created, again, four to six to 12 years in the past, from that Bloomfield residence to the place to be searched and Deer Lane, there's nothing pled there. It's just solely based on the officer's training and experience and Rojas holds that that is not enough. And seeing that there may not be any more pending questions, I just respectfully ask your honors to reverse the district court's decision and remand. Thank you. All right. Thank you, counsel. The court will take this matter under advisement. Court stands in recess.